2010 Ark. 481

**SOUTHWESTERN ENERGY PRODUCTION COMPANY,**
Appellant

v.

**James ELKINS and Ruby Elkins as Husband and Wife, Appellees.**

No. 10–516.

Supreme Court of Arkansas.

Dec. 9, 2010.

Daily & Woods, P.L.L.C., Fort Smith, by: Jerry L. Canfield, for appellant.

Holleman and Associate, P.A., Little Rock, by: John T. Holleman, for appellees.

ROBERT L. BROWN, Justice.

On appeal, the appellant, Southwestern Energy Production Company ("Southwestern Energy"), asks this court to affirm the circuit court's order regarding Sections 8, 9, and 31; reverse the circuit court's order regarding Sections 4 and 5; and modify the order to begin the suspension of drilling obligations from the date of the filing of the complaint. On cross-appeal, the Elkinses ask this court to reverse the circuit court's order as to Sections 8 and 9 and affirm the order as to Sections 4 and 5. The Elkinses do not address the argument regarding the starting date of the suspension of the drilling operations. We affirm in part, reverse in part, and modify the circuit court's order.

The underlying facts in this case are undisputed. On September 30, 2004, appellees and cross-appellants, James Elkins and Ruby Elkins, husband and wife, entered into an Oil and Gas Lease Agreement with Schonwald Land, Inc. (Schonwald), which covered five sections of land in Conway County. The sections of land covered are identified as Sections 4, 5, 8, 9, and 31. The lease was subsequently assigned by Schonwald to Southwestern Energy. The lease term was two years with an option to extend the lease for an additional two years. The lease provision governing length of term is as follows:

Subject to the other provisions herein contained, this lease shall remain in full force for a term of two (2) years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the above described land or drilling operations are continuously prosecuted as hereinafter provided. "Drilling Operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas; and drilling operations shall be considered to be "continuously prosecuted" if not more than 180 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. If, at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but lessee is then engaged in drilling operations, this lease shall continue in force so long as drilling operations are continuously prosecuted; and if production of oil and gas results from any such drilling operations, this lease shall continue in full force so long as oil or gas shall be produced. If, after

the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if the lessee is then prosecuting drilling operations, or within 180 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if production results therefrom, then as long thereafter as oil or gas is produced form the described land.

On August 18, 2006, Southwestern Energy sent a letter and check to the Elkinses exercising its right under the lease to extend the lease term for an additional two years. On December 7, 2006, the first well was completed on Section 31. On June 11, 2007, a second well was completed on Section 31. On May 20, 2009, the first well was completed on Section 9. On May 21, 2009, a second well was completed on Section 9 that also developed acreage for drilling purposes in Section 8. This was the last well completed on any of the sections at issue in this case.

On August 28, 2009, the Elkinses mailed a letter to Southwestern Energy, demanding release from the lease of all acreage except Section 31. After a reply letter from Southwestern Energy that informed the Elkinses of the development on Sections 8 and 9, another letter, dated September 4, 2009, was mailed to Southwestern Energy, demanding release of all acreage except Sections 9 and 31.

On October 13, 2009, the Elkinses filed a complaint against Southwestern Energy and Schonwald to remove the cloud on the title to Sections 4, 5, and 8. In their complaint, they asserted causes of action for fraud, trespass on minerals, constructive fraud, breach of contract, or alternatively, unjust enrichment and promissory estoppel. Both parties filed motions for partial summary judgment with respect to Sections 4, 5, and 8.

The circuit court entered an order on April 7, 2010, and made the following findings:

1. All parties agree that there are no material issues of fact that remain to be resolved and that this case should be decided based upon application of A.C.A. § 15–73–201 to the stipulated facts.

2. The Court finds that production was commenced in Section 31 during the primary term of the lease agreement and remains subject to the terms of the original lease between the parties.

3. Although the Plaintiff argues that Section 9 should be released from the terms of the lease, the affidavit of Stephen L. Mahanay states that with a completion date of May 20, 2009, Southwestern Energy Company drilled, completed and produced gas from the Green Bay Packaging 8–17 # 2–9 well located in Section 9, Township 8 North, Range 17 West, in Conway County, Arkansas. The Plaintiff has put forth no evidence to contradict this affidavit. Therefore, the court finds that the completion of this well and production from it was within one year of the expiration of the primary term of the lease and is sufficient to extend the primary term of the lease as to all of Section 9.

4. The Plaintiff [has] also requested that their lands in Section 8 be released from the Defendants['] lease. Again, the Defendants rely upon the affidavit [of] Stephen L. Mahanay to establish that the lands of the Plaintiff lying in Section 8 are still subject to the primary terms of the lease. This affidavit states that on May 21, 2009, Southwestern Energy Production Company drilled, completed and procured gas from the Green Bay Packing 8–17 # 1–9H8 well which developed acreage, including Section 8

acreage described in the Lease from a drill site located on the surface of Section 9 pursuant to an approval issued by the Arkansas Oil & Gas Commission. The Plaintiff has put forth no proof to rebut the affidavit of Mr. Mahanay. The Court therefore finds that the property of the Plaintiff located in Section 8 of the lease remains subject to the terms of the lease by the completion and production from said well.

5. The Court notes and examination of the preamble to Act 330 of 1983 reveals that it states:

"Whereas, many citizens of Arkansas are not well-versed in the finer points of complex oil and gas law, . . .; and,

Whereas the standard oil and gas lease contains in the habendum clause a provision that if production in paying quantities is had in any part of the lands covered by the lease that the lease term is extended with respect to all lands covered by the lease; and,

Whereas, such clause unduly and unconscionably restricts the rights of the lessors of the nonproducing unexplored lands which restriction is against the public policy of encouraging the discovery and production of oil and gas:"

The Court finds that to allow acreage contained in sections in which there has not been production in paying quantities or development during the primary lease term or within one (1) year thereafter to remain subject to the lease by production or development in other sections contained in the lease defeats the purpose and intent of Act 330 of 1983.

Therefore, the lands of the Plaintiff in Section[s] 4 and 5 are released from the lease agreement between the Plaintiffs and the Defendants.

6. The Court further finds that the Defendant's drilling obligations under Ark.Code Ann. § 15–73–201 (Repl.) are suspended from the date of this opinion until such time as any appeal has been completed or the time for appeal has run.

After entering this order, the circuit court issued a Rule 54(b) certificate, finding that its interpretation of Arkansas Code Annotated section 15–73–201 was final, that the Elkinses' claim of fraud against Schonwald remained unresolved but was subsidiary to the issue of statutory interpretation, that the determination of the statutory-construction issue will directly impact and most likely lead to the resolution of any unresolved issues in this case, and that there is no just reason for delay of the entry of final judgment for all purposes.[1]

This court reviews issues of statutory construction de novo. *Ryan & Co. AR, Inc. v. Weiss,* 371 Ark. 43, 45, 263 S.W.3d 489, 491 (2007). It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *Id.* The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Miss. River Transmission Corp. v. Weiss,* 347 Ark. 543, 550, 65 S.W.3d 867, 872–73 (2002). When the language of a statute is plain and unambiguous, there is no need to re-

---

**1.** Arkansas Rule of Civil Procedure 54(b)(1) (2010) permits a court to issue a certification directing the entry of final judgment with respect to fewer than all of the claims upon express determination, supported by specific factual findings, that there is no just reason for delay. The circuit court in this case recognized that the fraud claim against Schonwald remained unresolved but made specific findings to support the issuance of the certificate regarding the interpretation of Arkansas Code Annotated section 15–73–201.

sort to rules of statutory construction. *Id.* When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.*

A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. *Mitchell v. Lincoln,* 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 597, 237 S.W.3d at 458. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 597, 237 S.W.3d at 459.

The primary issue in this case is the proper interpretation of Arkansas Code Annotated section 15–73–201, and more specifically, the interplay between subsections (a) and (b), which read as follows:

(a) The term of an oil and gas, or oil or gas, lease extended by production in quantities in lands in one (1) section or pooling unit in which there is production shall not be extended in lands in sections or pooling units under the lease where there has been no production or exploration.

(b) This section shall not apply when drilling operations have commenced on any part of lands in sections or pooling units under the lease within one (1) year after the expiration of the primary term, or within one (1) year after the completion of a well on any part of lands in sections or pooling units under the lease.

Ark.Code Ann. § 15–73–201(a), (b) (Repl. 2009).

This court recently interpreted subsections 15–73–201(a) and (b) in *Snowden v. JRE Investments, Inc.,* 2010 Ark. 276, 370 S.W.3d 215. The facts of the *Snowden* case are remarkably similar to the facts in the instant case. The *Snowden* case also involved an oil and gas lease that was extended by drilling operations and production. *Snowden,* 2010 Ark. 276, 370 S.W.3d 215. The Snowdens owned the mineral interest in approximately 1250 acres of land that they leased by agreement on February 11, 2005, for a term of three years. The lease contained an extension provision stating that the lease "shall remain in force for a primary term of three (3) years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith." A separate provision provided:

Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

The lease also provided a definition for the term "operations" that included, but was not limited to,

> [c]ommencing, construction of roadways, preparation of drillsite, drilling, testing, completing, recompleting, deepening, plugging back[,] repressuring[,] pressuring[,] maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

The lease was assigned to Chesapeake on September 16, 2005.[2]

Chesapeake began drilling a well in Section 29 of the land. Several days later, on February 13, 2008, Chesapeake filed an Affidavit of Drilling Operations and Lease Extension, which extended the lease. On March 29, 2008, the first well was completed on Section 29. The last well was completed on Section 29 on September 9, 2008. Before that date, however, the Snowdens filed a complaint against Chesapeake and its predecessor on May 19, 2008. After a response, the defendants moved for summary judgment based on the lease terms and Arkansas Code Annotated section 15–73–201. The Snowdens filed a cross-motion for summary judgment. The circuit court entered its order and found that Arkansas Code Annotated section 15–73–201 was not ambiguous; that, pursuant to that section, the lease continued to be in effect as to all sections for one year subsequent to August 23, 2008;[3] and that 15–73–201(b) requires drilling one well per year to avoid the effect of subsection (a).

This court noted on appeal that the Snowdens' argument was whether the circuit court erred in interpreting Arkansas Code Annotated section 15–73–201.[4] Because it was undisputed that Chesapeake commenced drilling on the Snowden's property prior to the end of the term and continued drilling until the well was completed and producing, the question for this court was whether section 15–73–201 operates to limit extension of the lease to just Section 29 where production had occurred or whether the lease was extended as to all lands under the lease. *Snowden*, 2010 Ark. 276, 370 S.W.3d 215.

Regarding the interpretation of section 15–73–201, this court said:

> Applying the plain language of the statute, we must affirm the circuit court's grant of summary judgment in favor of Chesapeake.... The language of subsection (b) states that the section "shall not apply" where drilling has commenced on "any part of lands in sections or pooling units under the lease" within a year of the expiration of the primary term of the lease or within one year of the completion of a well on "any part of lands in sections or pooling units under the lease." Here, Chesapeake drilled on the Snowdens' land in Section 29 within a year after the expiration of the primary term, and it commenced drilling and completed two additional wells on Section 29 within that year, the last well being completed on September 9, 2009. Thus, pursuant to the statute's plain language, the circuit court properly granted summary judgment in favor of Chesapeake. Subsection (a) of the statute would operate to sever Section 29—the

---

2. Chesapeake refers to Chesapeake Exploration, LLC, Chesapeake Exploration Limited Partnership, and Chesapeake Energy Corporation, collectively.

3. This circuit court order held that the last well was completed on August 23, 2008, whereas Chesapeake provided undisputed evidence that the last well on Section 29 was completed on September 9, 2008, a contradiction this court noted.

4. There have been no amendments or changes to Arkansas Code Annotated section 15–73–201 (Repl.2009) since our decision in *Snowden*.

producing unit—from the Snowdens' other leased acreage for the purposes of extending the lease. However, by commencing drilling within a year of the expiration of the primary term, the statute unambiguously states that subsection (a) did not apply to sever the producing section from non-producing units. Therefore, the lease was extended to all lands under the Snowdens' lease, not just the producing section. Furthermore, Chesapeake completed its last well on September 9, 2009. Pursuant to subsection (b), Chesapeake had another year from that date to commence drilling on any section or pooling unit under the lease to continue to extend the lease to all leased lands, producing and non-producing, and prevent the operation of subsection (a), which would sever the lease as to non-producing sections or pooling units.

*Id.* at 9, 370 S.W.3d 215.

In the instant case, Southwestern Energy completed the two wells on Section 31 by June 11, 2007. That was well within the primary term of the lease, which expired September 30, 2008. The two wells on Section 9 were completed on May 20 and 21, 2009, which was within one year of the expiration of the primary term. The end of the primary term plus one year was September 30, 2009. Under this court's interpretation announced in *Snowden,* Southwestern Energy had until one year after the expiration of the primary term to commence drilling on the lands under the lease. Furthermore, as this court said in *Snowden,* Southwestern Energy had one additional year from the date it completed its last well—May 21, 2009—to commence drilling on any section or pooling unit under the lease to continue to extend the lease to all leased lands, producing and non-producing, and prevent the operation of subsection (a), which would sever the lease as to non-producing sections or pool-

ing units. Accordingly, the lease was extended for the entire leased area under section 15–73–201(b) by the timely commencement of drilling operations and the completion of a well on Section 9.

Other than urging this court to adopt a statutory interpretation of 15–73–201(b) that is different from what we announced in *Snowden,* the Elkinses argue that their lease is different from the one analyzed in *Snowden* and, therefore, *Snowden* should not control this case. Their argument is unconvincing. The Elkinses claim that drilling operations are defined differently in their lease than the lease in *Snowden.* While not exactly arguing why this distinction makes a difference in this court's interpretation and application of section 15–73–201, they are correct that there is a nominal difference between the two definitions. To reiterate, the lease in *Snowden* defined drilling operations as including, but not limited to,

> [c]ommencing, construction of roadways, preparation of drillsite, drilling, testing, completing, recompleting, deepening, plugging back[,] repressuring[,] pressuring[,] maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

*Snowden,* 2010 Ark. 276, 370 S.W.3d 215. The lease in the instant case defines drilling operations as including operations for the "drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas; . . ." The drilling operations definition in the Elkinses' lease is arguably more narrow than that in *Snowden.* That distinction, however, is to no avail because Southwestern Energy was clearly engaged in drilling operations (i.e. building and completing two new wells on Section 9)

under either definition within the one-year time frame permitted by section 15–73–201.

We hold that this case falls squarely within our holding in *Snowden* and that *Snowden* is controlling. Southwestern Energy is entitled to develop all of the lands covered by the lease for one year after the expiration of the primary term, pursuant to Arkansas Code Annotated section 15–73–201(b). Furthermore, Southwestern Energy is entitled to continue developing all of the land under the lease for one year after the last well was completed.

Southwestern Energy, in addition, asks this court to modify the circuit court's order suspending its drilling obligations. The circuit court suspended Southwestern Energy's obligations as of the date of its order, April 22, 2010. Southwestern Energy maintains that the suspension should have begun the date the Elkinses filed their complaint, which was October 13, 2009. The Elkinses make no reply to this request by Southwestern Energy.

We agree with Southwestern Energy that the circuit court should have suspended Southwestern Energy's obligations as of the date the Elkinses filed their complaint, October 13, 2009. In *Snowden,* this court determined that, pursuant to the equitable principle enunciated in *Winn v. Collins,* 207 Ark. 946, 183 S.W.2d 593 (1944),[5] Chesapeake was entitled to the suspension of its obligations because the Snowdens attacked the validity of the lease by filing suit and could not thereafter complain that Chesapeake failed to fulfill its obligations under the lease during litigation of their claim. *Snowden,* 2010 Ark.

276, 370 S.W.3d 215. We held that the circuit court erred in denying Chesapeake's request to suspend its drilling obligations under the lease during the pendency of litigation.

In the case at hand, the Elkinses attacked the validity of the lease by filing suit on October 13, 2009. Not to toll Southwestern Energy's obligation to drill as of that date would create an impossible dilemma for Southwestern Energy: either use the contested lands and potentially expose itself to more liability or refrain from using the lands and lose its investment and the one-year window granted under section 15–73–201 for development.[6]

Based on our *Snowden* decision, we affirm the circuit court's order with regard to Sections 8, 9, and 31. However, under *Snowden,* we reverse the circuit court's order with regard to Sections 4 and 5. As a final point, we modify the circuit court's order to make the suspension of Southwestern Energy's drilling obligations effective as of October 13, 2009, when the Elkinses' complaint was filed.

Affirmed in part. Reversed in part. Order modified.

DANIELSON and WILLS, JJ., concur in part and dissent in part.

PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.

Because I believe the majority misapplied Arkansas Code Annotated section 15–73–201 (Repl.2009) and should have affirmed the circuit court's finding that sections 4 and 5 were released from the lease agreement, I respectfully concur in part

---

5. The equitable principle referred to in *Winn* is simply that a lessor who files suit against a lessee may extend the time for mining (or development of the land) under the lease because the period of time that the action was pending would not count against the lessee.

6. Southwestern Energy asserts that it costs approximately 2 million dollars to build each well of the type used on the Elkinses' property.

and dissent in part. The majority relies on the holding pronounced in *Snowden v. JRE Investments, Inc.*, 2010 Ark. 276, 370 S.W.3d 215. While the holding in the instant case is consistent with that opinion, I agree with the dissent written in *Snowden* rather than the majority.

The majority here and the opinion issued in *Snowden* both have the effect of eviscerating the severance intended by Ark.Code Ann. § 15–73–201(a), as there is always going to be drilling in the original section of land, here section 31. If this is not the proper legislative intent, which I do not believe it could be, I encourage the General Assembly to examine this statute and clarify its intent.

I do, however, agree with the portion of the majority opinion which holds that the circuit court should have suspended Southwestern Energy's drilling obligations as of the date the Elkinses filed their complaint and modifies the circuit court's order as to that effect.

For these reasons, I respectfully concur in part and dissent in part.

WILLS, J., joins.

ELANA CUNNINGHAM WILLS, Justice, concurring in part and dissenting in part.

Although I concur with the majority opinion insofar as it affirms the circuit court's order regarding Sections 8, 9, and 31, I respectfully dissent from the majority's decision to reverse the circuit court's conclusions with regard to Sections 4 and 5 for the reasons painstakingly detailed in *Snowden v. J.R.E. Investments*, 2010 Ark. 276, 370 S.W.3d 215 (Wills, J., dissenting). I would affirm the circuit court in all respects, save for modifying the stay of appellant Southwestern Energy's drilling ob-

ligation so as to begin on the date of the filing of the complaint.

DANIELSON, J., joins.