2012 Ark. 157

**CENTRAL OKLAHOMA PIPELINE, INC., d/b/a CenOk Pipeline, Inc., Appellant**

v.

**HAWK FIELD SERVICES, LLC; Petrohawk Operating, Inc., a Wholly Owned Subsidiary of Petrohawk Energy Corporation; Petrohawk Operating Company; Petrohawk Operating Company, LLC; Lee Hallmark; John Doe 1; John Doe 2; and John Doe 3, Appellees.**

No. 11–992.

Supreme Court of Arkansas.

April 12, 2012.

Martin W. Bowen, Bowen Law Firm, PLLC, Little Rock, for appellant.

R. Scott Morgan, Perkins & Trotter, PLLC, Little Rock, Mitchell L. Herren, Hinkle Law Firm LLC, Wichita, KS, for appellees.

COURTNEY HUDSON GOODSON, Justice.

Appellant Central Oklahoma Pipeline, Inc., d/b/a/ CenOk Pipeline, Inc., appeals the grant of summary judgment on its claims against appellees Hawk Field Services, LLC; Petrohawk Operating, Inc., a wholly owned subsidiary of Petrohawk Energy Corporation; Petrohawk Operating Company; Petrohawk Operating Company, LLC; Lee Hallmark; and John Does 1, 2, and 3. For reversal, appellant asserts that the circuit court erred (1) by ruling that Arkansas Code Annotated section 17–25–103(d) (Repl.2010) barred its claims for breach of contract and a violation of the Arkansas Deceptive Trade Practices Act (ADTPA); (2) in ruling that section 17–25–103(d) does not violate article 2, section 13 of the Arkansas Constitution; (3) by ruling that Arkansas Code Annotated section 17–25–313 (Repl.2010) does not impose a tort duty on engineers who fail to inform prospective bidders that they must have a contractor's license; (4) in ruling that section 17–25–103(d) bars its negligence claims against appellee Hallmark and the

John Doe defendants and its tort claims against the Hawk defendants based on respondeat superior; and (5) by ruling that its constitutional claim and tort claims are barred by principles of res judicata.

### Procedural History and Factual Background

On March 18, 2009, appellant filed suit against Hawk Field Services, LLC; Petrohawk Operating, Inc.; Petrohawk Operating Company; Petrohawk Operating Company, LLC (collectively "Hawk" or "Hawk defendants"); and Crafton, Tull, Sparks & Associates, Inc. ("CTS"). In its complaint, appellant asserted against Hawk claims for breach of contract, a violation of the ADTPA, and for the establishment of a mechanics' and materialmen's lien, as well as a miners' lien. According to the complaint, in July 2008, Hawk publicly solicited and later accepted appellant's bids for the construction of a twelve-mile, natural-gas pipeline located partially in Conway County ("South Section Project") and partially in Conway and Van Buren Counties ("North Section Project") on easements held by Petrohawk Operating Company. Subsequently, the parties modified the contract for the North Section Project, wherein Hawk engaged appellant to build the "Phase One" and "Loop" pipelines in Van Buren County. Appellant alleged that it had provided substantial amounts of labor and materials for the completion of the projects, which included, among other things, clearing the pipeline right of way; digging ditches; breaking, blasting, and cutting rock; welding pipe; installing pipe fittings; burying pipe; and installing tie-ins. In addition, appellant asserted that substantial amounts of labor and materials were provided by subcontractors that it hired in connection with its performance of the contracts.

As its claim for breach of contract, appellant asserted that Hawk terminated without cause its contract to construct the Phase One pipeline project on December 16, 2008, and that Hawk ordered it to cease all operations on January 31, 2009, for the stated reason that appellant was not licensed to perform work as a contractor, as required by section 17–25–103. Appellant alleged that Hawk subsequently terminated both the North Section and the South Section contracts on February 2, 2009, because appellant was not licensed by the Arkansas Contractors Licensing Board and that Hawk took the position, in reliance on section 17–25–103(d), that it would not pay amounts owed for labor and materials because appellant did not possess a contractor's license. Appellant claimed that Hawk had refused to pay $7,469,917.21 for work it had completed.

Appellant asserted that Hawk violated the ADTPA by treating appellant in a deceptive and unconscionable manner. In this regard, appellant alleged that, during a meeting held on January 13, 2009, Hawk asserted that appellant would be penalized for not completing work on the projects on time but that, several days later, Hawk assured appellant that penalties would not be imposed and that appellant would be paid for the sums it was owed. Appellant stated that, based on these assurances, it continued to work on the projects. It alleged that Hawk actually had no intention of foregoing penalties and of paying appellant and that Hawk made these assurances in an effort to keep appellant working without pay. Appellant contended that Hawk behaved in a deceptive and unconscionable manner by stringing it along under the false promise of pay and waiting until near the completion of the work to assert that it would not be paid because it did not have a contractor's license.

As its claim against CTS, appellant alleged that CTS prepared contract drawings for the projects and that it was the engineer on the projects. Appellant asserted that CTS had a duty to inform it of the necessity of having a contractor's license under the provisions of section 17–25–313 and that CTS was negligent for failing to give notice of this requirement.[1]

Hawk Field Services, LLC, filed a separate answer disputing the material allegations of the complaint. Pleading affirmatively, it alleged that, based on section 17–25–103(d), appellant was barred from asserting claims for breach of contract and a violation of the ADTPA because appellant failed to obtain a contractor's license from the Arkansas Contractors Licensing Board. Hawk Field Services also asserted a counterclaim for breach of contract, alleging that appellant overcharged for its services and that it did not complete the projects by the deadlines set forth in the contracts because it failed to supply sufficient labor, equipment, and materials for the projects. It contended that, as a result, it was required to employ other contractors to complete the work at considerable expense. Petrohawk Operating, Inc., and Petrohawk Operating Co. answered the complaint and also alleged, as an affirmative defense, that appellant's claims were barred by section 17–25–103(d) because appellant did not hold a contractor's license.

The Hawk defendants subsequently filed a joint motion for summary judgment on the ground that section 17–25–103(d) barred appellant's claims for relief. Along with their motion and brief, they submitted the affidavit of Lee Hallmark, the Director of Operations for Hawk Field Services, LLC. Hallmark averred that the pipeline was constructed on right-of-way easements obtained from private landowners along the pipeline route and that no land upon which the pipeline traverses is owned by the Hawk defendants with the exception of a small section measuring 8,162.29 feet that is owned by One Tec, a subsidiary of Petrohawk Energy Company. Further, Hallmark stated that the pipeline is utilized by other companies to transport natural gas, such as Chesapeake Energy, which leases space on the pipeline to transport natural gas. In its response, appellant argued that, based on Arkansas Code Annotated section 17–25–101(a)(1) (Repl.2010), for the statutory bar to apply the work must be done "on public or private property for lease, rent, resale, public access, or similar purpose" and that Hawk had failed to prove that the easements in question were leased. Appellant also contended that, if a license was required, Hawk's engineers had an affirmative duty to inform it about this requirement based on section 17–25–313.

On April 1, 2010, appellant filed an amended complaint to assert that section 17–25–103(d) is unconstitutional as a violation of article 2, section 13 of the Arkansas Constitution.[2] Thereafter, on May 14, 2010, the circuit court held a hearing on Hawk's motion for summary judgment. At the conclusion of the hearing, the circuit court took the matter under advisement.

On July 22, 2010, appellant filed a second amended complaint adding Lee Hallmark and John Does 1, 2, and 3 as defendants. Appellant alleged that Hallmark was the project engineer for the Hawk

---

1. Appellant would later take a voluntary nonsuit against CTS, as reflected by an order entered on February 25, 2011.

2. Appellant also contended that section 17–25–103(d) violated article 5, section 32 of the Arkansas Constitution, but appellant later abandoned that claim.

defendants and that he prepared the construction specifications provided to contractors when the bids were solicited. Appellant also alleged that the John Doe defendants were engineers who provided engineering specifications for the projects and the July 2008 Invitation to Bid. Appellant contended that Hallmark and the John Doe defendants had a duty under section 17–25–313 to notify it that a contractor's license was required and that their failure to inform it of this requirement constituted negligence. Further, appellant alleged that Hallmark and the John Doe defendants were employees of the Hawk defendants and that their negligence was imputed to the Hawk defendants under the doctrine of respondeat superior.[3]

On July 23, 2010, the circuit court entered an order granting Hawk's motion for summary judgment. In this order, the court found that appellant was a "contractor" as defined by section 17–25–101(a)(1); that the contracts entered into by the parties were for labor and materials exceeding $20,000; that the undisputed facts revealed that appellant did not have a contractor's license; and that section 17–25–103(d) precluded appellant from bringing the causes of action set forth in its complaint. Further, the circuit court found that Hallmark's affidavit constituted proof that the pipeline constructed by appellant for the Hawk defendants clearly brought the contracts in dispute within the requirements of section 17–25–101. The court also noted that appellant had failed to rebut Hallmark's affidavit with proof of its own. In addition, the circuit court ruled that the Hawk defendants had no duty to inform appellant that a license was required. In this regard, the court found that section 17–25–313 was directed to-

ward engineers and architects who are requesting bids and that the statute was silent as to any obligation of a firm such as Hawk to so advise bidders. Thus, the court ruled that the statute was not applicable.

The Hawk defendants and Hallmark answered the second amended complaint and later filed joint motions for summary judgment. In their first motion, they argued that section 17–25–103(d) is constitutional and that they were entitled to judgment as a matter of law on that issue. As their second motion for summary judgment, they argued that the matters complained of in the second amended complaint were barred under principles of res judicata, because the issues had previously been decided against appellant in the July 23, 2010 order of summary judgment. In addition, the Hawk defendants and Hallmark contended that section 17–25–313 does not give rise to a private cause of action. Appellant responded to the first motion for summary judgment and also filed a motion for partial summary judgment in which it argued that section 17–25–103 is unconstitutional under article 2, section 13 of the constitution. In responding to the second motion for summary judgment, appellant maintained that section 17–25–313 created a duty in tort and that none of the elements of res judicata were satisfied.

After a hearing, the circuit court entered an order on June 23, 2011, granting Hawk's motions for summary judgment and denying appellant's motion for partial summary judgment. The court stated that it had implicitly ruled in the July 23, 2010 order that section 17–25–103(d) was constitutional. The court then explicitly ruled that the statute did not violate article 2, section 13 of the constitution under a ra-

---

3. In the second amended complaint, appellant also asserted the additional claims that section 17–25–103(d) was unconstitutional under the Contracts Clause and the Due Process Clause of the United States Constitution. Appellant later withdrew these claims.

tional-basis standard of review because the statute advanced the legitimate governmental interest of promoting public safety by requiring contractors who engage in certain types of construction to meet standards and responsibilities, such as experience, ability, and financial condition. The circuit court also found that section 25–13–313 did not give rise to a private cause of action for its violation and also that res judicata barred the new claims raised in the second amended complaint against Hallmark, the John Doe defendants, and Hawk. In the order, the circuit court directed the entry of a final judgment under Rule 54(b) of the Arkansas Rules of Civil Procedure, and appellant filed a timely notice of appeal from the order.

### Standards of Review

■ This appeal comes to us from an order of summary judgment. The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Harrisburg Sch. Dist. No. 6 v. Neal,* 2011 Ark. 233, 381 S.W.3d 811. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Campbell v. Asbury Auto., Inc.,* 2011 Ark. 157, 381 S.W.3d 21. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*

■ In the instant case, the grant of summary judgment was based, in part, on the circuit court's interpretation of Arkansas Code Annotated sections 25–17–101 and 25–17–103. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Evans v. Hamby,* 2011 Ark. 69, 378 S.W.3d 723. It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *Sw. Energy Prod. Co. v. Elkins,* 2010 Ark. 481, 374 S.W.3d 678. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Miss. River Transmission Corp. v. Weiss,* 347 Ark. 543, 65 S.W.3d 867 (2002). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Thomas v. Hall,* 2012 Ark. 66, 399 S.W.3d 387.

■ By means of summary judgment, the circuit court also considered the constitutionality of section 17–25–103(d). This court reviews both the circuit court's interpretation of the constitution as well as issues of statutory interpretation de novo, because it is for this court to determine the meaning of a statute. *Forrester v. Martin,* 2011 Ark. 277, 383 S.W.3d 375. Every statute enjoys a presumption of constitutionality. *Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, 308 S.W.3d 135. The party asserting that a statute is unconstitutional bears the burden of demonstrating that the statute violates the constitution. *Broussard v. St. Edward Mercy Health Sys., Inc.,* 2012 Ark. 14, 386 S.W.3d 385. Any doubt is resolved in favor of constitutionality. *Id.* An act should be struck down only when there is a clear incompatibility between

the act and the constitution. *Barclay v. First Paris Holding Co.,* 344 Ark. 711, 42 S.W.3d 496 (2001). We acknowledge that it is the duty of the courts to sustain a statute unless it appears to be clearly outside the scope of reasonable and legitimate regulation. *Jegley v. Picado,* 349 Ark. 600, 80 S.W.3d 332 (2002) (citing *City of Little Rock v. Smith,* 204 Ark. 692, 163 S.W.2d 705 (1942)).

*Bar Imposed by Section 17–25–103(d)*

As its first point on appeal, appellant argues that the circuit court erred in ruling that section 17–25–103(d) bars its claims for breach of contract and the violation of the ADTPA.[4] It contends that the statute does not preclude its claims because, pursuant to the definition of "contractor" found in section 17–25–101(a)(1), the question of whether someone falls within the definition of a contractor depends on whether the "property" on which the project was built was for "lease, rent, resale, public access, or similar purpose." Appellant maintains that Hawk offered no evidence that the easements on which the pipeline was constructed were for lease, rent, resale, public access, or similar purpose and that Hallmark's affidavit does not establish Hawk's claim because he stated that only the space within the pipeline was leased, but not the easements where it was located. As support for its argument, appellant relies on our decision in *Meadow Lake Farms, Inc. v. Cooper,* 360 Ark. 164, 200 S.W.3d 399 (2004). In opposition to this argument, Hawk points out that section 17–25–101(a)(1) includes "utility" construction. Citing the Rules and Regulations of the Contractors Licensing and Bond Law, Hawk notes that, among the categories of construction work requiring

licensure, the Rules include under the heading of "Municipal and Utility Construction" such classes as underground piping and gas distribution and transmission lines. Hawk asserts that the statute and the regulations demonstrate that the construction of a natural-gas pipeline falls within the scope of the law requiring licensure.

Section 17–25–101(a)(1) provides the following definition of the term "contractor":

(a)(1) As used in this chapter, "contractor" means any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, that, for a fixed price, commission, fee, or wage, attempts to or submits a bid to construct or demolish, or contracts or undertakes to construct or demolish, or assumes charge, in a supervisory capacity or otherwise, or manages the construction, erection, alteration, demolition, or repair, or has or have constructed, erected, altered, demolished, or repaired, under his or her, their, or its direction, any building, apartment, condominium, highway, sewer, utility, grading, or any other improvement or structure on public or private property for lease, rent, resale, public access, or similar purpose, except single-family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor, including, but not limited to, labor and materials, is twenty thousand dollars ($20,000) or more.

Subsection (c) of the statute provides that "[i]t is the intention of this definition to include all improvements, demolition, or structures, excepting only single-family residences." Under section 17–25–103(a), any "contractor" who violates the licensure

---

**4.** The circuit court's ruling encompassed appellant's claim to establish a mechanics' and materialmen's lien and a miners' lien. Appel-

lant does not include these claims in its argument.

law shall be guilty of a misdemeanor and is subject to a fine of not less than $100 nor more than $200 for each offense, with each day to constitute a separate offense. In addition, section 17–25–103(d) provides as follows:

No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter.

Code provisions, such as sections 17–25–101 and 17–25–103, that impose penalties for noncompliance with licensing requirements must be strictly construed. *Cooper, supra; Wilcox v. Safley,* 298 Ark. 159, 766 S.W.2d 12 (1989).

In *Cooper, supra,* Meadow Lake Farms, which was primarily a farming corporation, also provided agricultural, land-leveling services to other farmers for hire. It leveled a field owned by Cooper, but Cooper did not pay for the work. When Meadow Lake Farms sued for payment, Cooper filed a motion for summary judgment, asserting that Meadow Lake Farms was a "contractor" and could not file suit for breach of contract because it did not possess a contractor's license. In accepting Cooper's argument, the circuit court focused on the word "grading" found in section 17–25–101(a)(1) and the Rules and Regulations of the Contractors Licensing and Bond Law to rule that Meadow Lake Farms was a contractor subject to the licensure requirement.

On appeal from the grant of summary judgment, Meadow Lake Farms argued that it was not a "contractor" because Cooper's land was not "for lease, rent, resale, public access or similar purpose," as required by section 17–25–101(a)(1). This court agreed with Meadow Lake Farms's argument that a "contractor" un-der section 17–25–101(a)(1) must be involved in some construction enterprise regarding structures and not simply engaged in field leveling for crops, where no structure is contemplated. We said that this "argument necessarily brings into play what work is being performed but also where the service is being provided, that is on what property." *Cooper,* 360 Ark. at 169, 200 S.W.3d at 403. We held that, "to be a contractor, the work must pertain to 'property for lease, rent, resale, public access, or similar purpose.'" Finding the statute to be ambiguous, as we had done in *Safley, supra,* and strictly construing its provisions, we concluded that there existed a genuine issue of material fact surrounding whether the grading services took place on property for lease, rent, resale, public access, or similar purpose. Thus, we reversed and remanded the order of summary judgment for that factual determination to be made.

Appellant relies on *Cooper* to argue that, to be a contractor, the property on which the utility, improvement, or structure is placed must be leased. Appellant reads too much into this decision. *Cooper* was based on our conclusion that the term "grading" was ambiguous in the context where the grading services were not performed for purposes of construction but were for the purpose of leveling farm land. We did not suggest that the building of a structure that is to be leased is excluded from the definition of "contractor." For our purposes here, the definition of the term "contractor" found in section 17–25–101(a)(1) includes "any ... corporation, that, for a ... fee ... contracts ... to construct ... any ... utility ... on public or private property for lease, rent, resale, public access, or similar purpose." Under the Rules and Regulations of the Contractors Licensing Board,

utility construction expressly includes underground piping and gas distribution and transmission lines. Rules and Regulations of the Contractors Licensing and Bond Law, 033–00–001 Ark.Code R. § 224–25–5 (Weil 2000). Indeed, appellant's construction of a natural-gas pipeline wherein space is leased falls squarely within the ambit of the statutory definition. Therefore, the circuit court did not err in granting summary judgment on this issue.

*Constitutionality of Section 17–25–103(d)*

Appellant's next argument is that section 17–25–103(d) violates article 2, section 13 of the Arkansas Constitution, which provides that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property, or character; he ought to have justice freely, and without purchase; completely, and without denial; promptly, and without delay; conformably to the laws." Appellant asserts that section 17–25–103(d) violates the right of redress because it deprives contractors of their right to sue and recover for unpaid work. Additionally, it argues that the statute is an unreasonable way of achieving its intended purposes.

This court has held that, in determining whether a statute violates article 2, section 13, the proper inquiry is whether the General Assembly's enactment of the statute provides a reasonable means of achieving a permissible public-policy objective. *White v. City of Newport*, 326 Ark. 667, 933 S.W.2d 800 (1996). Thus, we have applied a rational-basis test to challenges made under this constitutional provision. *Davis v. Parham*, 362 Ark. 352, 208 S.W.3d 162 (2005); *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Eady v. Lansford*, 351 Ark. 249, 92 S.W.3d 57 (2002). The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *Ark. Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 166 S.W.3d 550 (2004). It is not our role to discover the actual basis for the legislation. *Archer v. Sigma Tau Gamma Alpha Epsilon, Inc.*, 2010 Ark. 8, 362 S.W.3d 303. We merely consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes. *Id.* If we determine that any rational basis exists, the statute will withstand the constitutional challenge. *McLane Southern, Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006).

In *Roberson v. Roberson*, 193 Ark. 669, 101 S.W.2d 961 (1937), this court rebuked a challenge to the automobile guest statute under article 2, section 13. The statute denied the right of recovery to all persons riding as guests "unless such vehicle was wilfully and wantonly operated in disregard to the rights of others."[5] We held that the statute was not constitutionally infirm because its restriction was a proper exercise of police power to legislate matters concerning the interest of public welfare and convenience and because it did not wholly deny the right of recovery. This reasoning is applicable here. The statute in question does not abrogate the right of all contractors to bring suit. It denies that right only to those contractors who do not possess a license.

This court has recognized that the purpose behind the Contractors Licensing Act

---

**5.** The guest statute was repealed by Act 13 of 1983.

is to require contractors who desire to engage in certain types of construction work to meet certain standards of responsibility, such as experience, ability, and financial condition. *Brimer v. Ark. Contractors Licensing Bd.*, 312 Ark. 401, 849 S.W.2d 948 (1993) (citing *Bird v. Pan W. Corp.*, 261 Ark. 56, 546 S.W.2d 417 (1977)). Appellant argues that the statute does not achieve its purposes because the decision to invoke the statute is relegated by the State to the owner of a project who can use it to refuse payment without regard to public safety or any other purpose that the statute was designed to protect. Appellant also asserts that the statute is not necessary because the licensing board may punish contractors who fail to comply with its rules and regulations.

We rejected a similar claim in *Williams v. Joyner–Cranford–Burke Constr. Co.*, 285 Ark. 134, 685 S.W.2d 503 (1985), where it was argued that the licensing statute was intended to protect the public and that it should not be used as a shield to avoid an otherwise valid obligation. We found that the statute was clear in its intended effect to preclude unlicensed contractors from bringing suit, and we commented that "[u]nfortunately for the appellants, the statute is a penal one, and, at times, harsh results flow from construction of penal statutes." *Williams*, 285 Ark. at 139, 685 S.W.2d at 506. Our question here is whether the statute is rationally related to a legitimate governmental purpose under any factual scenario. *Eady, supra.* As designed to protect the public, it advances the goal of providing an incentive for contractors to undergo the licensing process to ensure that the standards set by the licensing board are met. Appellant has failed to meet its heavy burden of overcoming the presumed constitutionality of the statute. We affirm on this point.

## Private Cause of Action

Appellant argues that section 17–25–313 creates a private cause of action in negligence against the engineers who allegedly failed to inform it that a license was required. Appellant argues that the statute imposes a duty on engineers who provide plans and specifications to advise prospective bidders that a contractor's license is required and that the circuit court's interpretation of the statute renders it meaningless. As its fourth point on appeal, appellant asserts that the Hawk defendants can be held vicariously liable for the negligence of its engineers based on respondeat superior. As these two issues are related, we address them together.

Section 17–25–313 provides,

All architects and engineers preparing plans and specifications for work to be contracted in the State of Arkansas shall include in their invitation to bidders and in their specifications a copy of this chapter or such portions thereof as are deemed necessary to convey to the invited bidder, whether he or she is a resident of this state or not, the information that it will be necessary for him or her to have a certificate of license with the proper classification from the Contractors Licensing Board before his or her bid is submitted.

At its core, appellant's argument raises the question of whether the statute imposes a tort duty on engineers and architects, such that they may be held liable in negligence when there is a failure to comply with the statute. This court has stated that the question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury. *Marlar v. Daniel*, 368 Ark. 505, 247 S.W.3d 473 (2007). More specifically, to prove negligence in Arkansas, the plaintiff must show a failure to exercise proper care in the performance of a legal duty,

which the defendant owed to the plaintiff under the circumstances. *Id.* Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Kowalski v. Rose Drugs of Dardanelle, Inc.,* 2011 Ark. 44, 378 S.W.3d 109. Under Arkansas law, the violation of a statute is only evidence of negligence and does not constitute negligence per se. *Shannon v. Wilson,* 329 Ark. 143, 947 S.W.2d 349 (1997).

The issue raised in this appeal requires us to determine the legislative intent behind section 17–25–313. *See Branscumb v. Freeman,* 360 Ark. 171, 200 S.W.3d 411 (2004). As previously mentioned, we review statutory-interpretation appeals de novo, as it is for us to decide the meaning of the statute. *Id.*

This court has previously imposed civil liability where a statute is silent on the issue of whether there exists a private cause of action. *Jackson v. Cadillac Cowboy, Inc.,* 337 Ark. 24, 986 S.W.2d 410 (1999); *Shannon v. Wilson, supra.* In *Shannon,* we held that a licensed vendor's violation of Arkansas Code Annotated section 3–3–202 (Repl.1996), prohibiting the sale of alcohol to minors, is evidence of negligence that can be submitted to a jury. However, our decision was based on the enactment of section 3–3–202, where the legislature explicitly expressed an intent to protect minors as a special class of citizens and it placed an affirmative duty on licensed vendors to safeguard against selling alcohol to minors. Also, in *Jackson v. Cadillac Cowboy, Inc.,* we extended the holding in *Shannon* by recognizing a cause of action for negligence against licensed vendors who sell liquor to intoxicated persons. We concluded that the high duty of care imposed by the legislature on licensed alcohol vendors, as expressed in Arkansas Code Annotated section 3–3–218(a) & (b)

(Repl.1996), was sufficient for us to create an individual cause of action for its violation.

However, in *Branscumb, supra,* we declined to recognize a private cause of action for negligence against the owner of an uninsured motor vehicle based solely on a violation of the Arkansas Motor Vehicle Safety Act and the Arkansas Motor Vehicle Liability Insurance Act. We distinguished *Shannon* and *Cadillac Cowboy* on the basis that in those cases we relied on the high duty of care that has been statutorily imposed on licensed alcohol vendors.

In the present case, sections 17–25–103 and 17–25–313 are found in the same subchapter. Statutes relating to the same subject matter are said to be in pari materia and should be read in a harmonious manner, if possible. *Mays v. Cole,* 374 Ark. 532, 289 S.W.3d 1 (2008). Section 17–25–103 expresses the clear legislative intent to bar contractors from seeking compensation for work performed without a license. *Williams, supra.* To hold that a contractor could collect from an architect or engineer compensation that it could not otherwise recover would circumvent the clear intent of the statutory bar. Therefore, we discern no legislative intent for a private cause of action to arise under section 17–25–313. As there is no private right of action, it follows that the Hawk defendants cannot be held vicariously liable for the alleged failure of its employees to give notice under the statute.

### Res Judicata

Appellant's final argument is that the circuit court erred in ruling that its claims asserted in the second amended complaint were barred by principles of res judicata. Those claims included appellant's contention that section 17–25–103(d) was uncon-

stitutional and the assertion that section 17–25–313 created a private cause of action in negligence. As we have already addressed these issues and have found them to be without merit, we need not discuss whether these claims are also barred by res judicata. *See Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395.

Affirmed.