# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3435
_____

City of Ashdown, Arkansas, individually and on behalf of all others

*Plaintiff - Appellant*

v.

Netflix, Inc.; Hulu, LLC

*Defendants - Appellees*

------------------------------

City of Creve Coeur; Gwinnett County, Georgia; City of Brookhaven, Georgia; Unified Government of Athens-Clarke, Georgia

*Amici on Behalf of Appellant(s)*

DirecTV LLC; DISH Network, L.L.C; Sling TV, L.L.C.

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana
_____

Submitted: September 20, 2022
Filed: November 8, 2022
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Arkansas Video Service Act of 2013 (VSA) establishes a statewide franchising scheme for authorizing video service providers to provide services in political subdivisions within the state. Providers may either negotiate franchises with individual political subdivisions or obtain a certificate of franchise authority from the Secretary of State, which can cover multiple political subdivisions. Ark. Code Ann. § 23-19-203(a), (c). The certificate authorizes providers to use public rights-of-way to deliver their video service and requires the provider to pay a fee as required by each political subdivision in which service is provided. Ark. Code Ann. § 23-19-205(b), 206(b).

Netflix and Hulu were already providing online video streaming services prior to the passage of the VSA; they have not applied for certificates of franchise authority. The City of Ashdown, Arkansas, filed a putative class action against Netflix and Hulu in 2020, seeking both a declaration that they must comply with the VSA and damages for their failure to pay the required fee. The district court[1] granted Netflix and Hulu's motions to dismiss, concluding, among other things, that the VSA does not give Ashdown a right of action to bring this suit. Ashdown appeals, arguing that the district court misinterpreted the VSA. We affirm.

We review the dismissal of claims *de novo*, "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Cockram v. Genesco, Inc., 680 F.3d 1046, 1056 (8th Cir.

_____

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

2012) (quoting <u>Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.</u>, 516 F.3d 695, 698 (8th Cir. 2008)). We apply Arkansas rules of statutory construction to interpret the VSA. <u>See</u> <u>Behlmann v. Century Sur. Co.</u>, 794 F.3d 960, 963 (8th Cir. 2015). The Arkansas Supreme Court has explained those rules as follows:

> The primary rule of statutory interpretation is to give effect to the intent of the legislature. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. Furthermore, we will not read into a statute language that was not included by the legislature.

<u>Ark. Dep't of Corr. v. Shults</u>, 541 S.W.3d 410, 412 (Ark. 2018) (internal citations omitted).

Ashdown argues that the VSA creates an express right of action for municipalities to bring claims. It points to the provision titled "Applicability of other laws," which states that the VSA "shall not be interpreted to prevent . . . a political subdivision . . . from . . . seeking clarification of its rights and obligations under . . . state law or to exercise a right or authority under . . . state law." Ark. Code Ann. § 23-19-210(b). Ashdown asserts that the VSA is a "state law" under which it seeks to clarify and exercise its rights, so this provision gives it an express right of action to do so.

We are unpersuaded by Ashdown's argument. The fact that the VSA does not "prevent" a party from exercising a right does not, itself, confer a right. This provision is more logically read to preserve existing rights of action. The reference to "other laws" in the section title supports this conclusion. In addition, the legislature knew how to explicitly confer a right of action onto municipalities, as the VSA clearly conferred a right of action onto the Public Service Commission. <u>See</u>

Ark. Code Ann. § 23-1-104 ("The commission shall have the right . . . to file suit . . . to compel compliance with the provisions of this act or . . . to prevent violations of this act"). The legislature's failure to use such explicit language with regard to municipalities supports the conclusion that it did not intend to create an express right of action.

Ashdown next argues that even if there is no express right of action, a right of action is implied. The Arkansas Supreme Court has recognized an implied right of action when "the legislature explicitly expressed an intent to protect . . . a special class of citizens" and when recognizing a right of action would not "circumvent the clear intent of the statut[e]." Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC, 400 S.W.3d 701, 712 (Ark. 2012).

Municipalities are not a "special class" that the legislature intended to protect through the VSA. Ashdown points to the legislature's explanation for passing the VSA on an emergency basis, which stated in part "that perhaps the lack of uniformity in the laws governing video service providers is inequitable to certain citizens and government entities[.]" 2013 Ark. S.B. 101, 89th Gen. Assemb., Reg. Sess. (Ark 2013), Sec. 3. Such qualified language lacks the specificity and force that the Arkansas Supreme Court has elsewhere found significant in identifying a special class. For example, in two cases related to alcohol sales, the Arkansas Supreme Court emphasized that the statutes at issue (1) explicitly stated that alcohol vendors had a "high duty of care in the operation of the licensed establishment" and an affirmative obligation to operate the establishment in the public interest and (2) explicitly outlawed sales to high-risk groups. See Shannon v. Wilson, 947 S.W.2d 349, 357 (Ark. 1997) (quoting Ark. Code Ann. § 3-3-218(a)) (establishing liability for negligence in selling alcohol to a minor); see also Jackson v. Cadillac Cowboy, Inc., 986 S.W.2d 410 (Ark. 1999) (establishing liability for negligence in selling alcohol to an intoxicated person). The VSA does not establish such a "high duty of care" for

video service providers, nor does it signal a strong public policy of protecting municipalities.

Ashdown further argues that it is part of a special class because it is owed fees and has other rights under the VSA, such as the ability to inspect the records of video service providers to ensure the fee is calculated correctly. The VSA's imposition of duties on video service providers, however, does not automatically create a private right of action in the beneficiary. See Young v. Blytheville School Dist., 425 S.W.3d 865, 871 (Ark. Ct. App. 2013) (holding that an act that imposed a duty on school districts to provide a safe program did not create a private right of action for students).

As noted above, the Public Service Commission has the right and duty to bring suit to enforce the VSA. Ark. Code Ann. § 23-1-104. The statute limits the Commission to mandamus and injunction proceedings, which do not allow relief in the form of compelling payment of past-due fees by a private corporation. Ashdown argues that this lack of a remedy undercuts the purpose of the statute, so we should recognize an implied right of action to allow municipalities to pursue their own remedies. Whether the failure to recognize an implied right of action would circumvent the statute's intent is an inversion of the question at issue, however, which is focused on the effects of recognizing an implied right of action.

We conclude that recognizing a right of action would circumvent the intent of the VSA. Read as a whole, the statute aims to establish and regulate a statewide franchising system. The legislature stated that "this act is immediately necessary because it ensures uniform regulation of video service providers, assures equality of treatment of video service providers, and encourages new video service providers to enter the state." 2013 Ark. S.B. 101, Sec. 3. The VSA's clear intent to create uniformity across the state would be undermined if individual municipalities possessed authority to bring enforcement suits independently of the state body

charged with enforcement.  Because Ashdown is not part of a special class intended to be protected by the VSA and allowing Ashdown to bring this suit would circumvent the intent of the statute, we conclude that the VSA does not create an implied right of action in municipalities to enforce the statute.

The judgment is affirmed.

_____