CITY OF KENNER

VERSUS

NETFLIX, INC., AND HULU, LLC

NO. 22-CA-466

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 814-168, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

May 03, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Robert A. Chaisson

<u>**AFFIRMED**</u>
    **SMC**
    **MEJ**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CITY OF KENNER
 Joseph M. Bruno, Sr.
 Malvern C. Burnett
 Joshua C. Joseph
 Elvin L. Kistner

COUNSEL FOR DEFENDANT/APPELLEE,
NETFLIX, INC.
 Glenn L. M. Swetman
 Brandie M. Thibodeaux
 Mary A. Reed
 Mary Rose Alexander
 Robert C. Collins, III
 Jean A. Pawlow
 Peter E. Davis
 Henry Adrian van Seventer

COUNSEL FOR DEFENDANT/APPELLEE,
HULU, LLC
 Martin E. Landrieu
 Phillip J. Antis, Jr.
 Victor Jih
 Praatika Prasad

**CHEHARDY, C.J.**

Plaintiff, the City of Kenner, appeals the trial court's judgment that sustained exceptions of no right of action and no cause of action filed by defendants Netflix, Inc., and Hulu, LLC. For the reasons that follow, we affirm the trial court's judgment sustaining the exceptions and dismissing Kenner's putative class action lawsuit.

FACTS AND PROCEDURAL HISTORY

This case concerns the application of Louisiana's Consumer Choice for Television Act ("CCTA"), La. R.S. 45:1361 *et seq.*, which authorizes subdivisions of the State to collect franchise fees from certain cable service or video service providers as defined in the Act.[1] Enacted in 2008, the CCTA authorizes the Secretary of State to issue a certificate of franchise to those providers who "construct or operate wireline networks in public rights of way." La. R.S. 45:1364A; La. R.S. 45:1363(4). By centralizing the franchise authority, the CCTA alleviates the previous scheme in which service providers had been required to negotiate and obtain separate franchises from each local government subdivision for use of its public rights of way—a much more laborious process.[2]

---

[1] In the cable industry, a "franchise" is authorization from a government entity to construct or operate a cable system in the public rights of way. *See* 47 U.S.C. § 522(9)-(10). Federal law allows state and local governments to issue franchises within their jurisdictions. *See* 47 U.S.C. §§ 541(a), 521(3); *see also City of Knoxville v. Netflix, Inc.*, 656 S.W.3d 106, 108 (Tenn. Nov. 22, 2022) ("traditional cable companies, which provide cable television through cable facilities— e.g., equipment such as transmission lines—located in the public rights-of-way, were the primary franchise recipients.").

[2] La. R.S. 45:1362 B states:

> The Legislature of Louisiana finds that reforming and streamlining the current system of regulating cable services and video services will relieve consumers of unnecessary costs and burdens … [and] further finds that a streamlined procedure for granting and renewing cable service and video service franchises will provide statewide uniformity to allow functionally equivalent service to compete fairly and to allow new consumer services to be deployed more quickly.

After a service provider obtains the necessary franchise certificate, "[a] local governmental subdivision shall allow the holder of a certificate to install, construct, and maintain a network within public rights of way and shall provide the holder of a certificate with open, comparable, nondiscriminatory, and competitively neutral access to the public rights of way." La. R.S. 45:1374 B. Governmental subdivisions may enact ordinances in conjunction with the CCTA which allows them to collect franchise fees from the certificate holders, which fees are not to exceed 5% of the "holder's gross revenues." La. R.S. 45:1366 A.[3]

On January 22, 2021, Kenner enacted Ordinance Number 11,813, which provides for the collection of franchise fees pursuant to the CCTA. In pertinent part, Kenner's Ordinance states:

> That all persons or entities providing cable or video services to the citizens of the City of Kenner pursuant to a state-issued certificate of franchise authority as provided in LSA-R.S. 45:1361 et seq., shall, pursuant to the provisions of LSA-R.S. 45:1366, pay the City of Kenner a franchise fee equal to five percent of the cable or video service provider's gross revenue, as that term is defined by the "Consumer Choice for Television Act of 2008," derived from operations within the City's municipal limits.

At the time that Kenner enacted the Ordinance, La. R.S. 45:1363(14) (2008) defined "video service" as follows:

> "Video service" means video programming services provided through wireline facilities located at least in part in the public rights of way without regard to delivery technology, including Internet protocol technology. "Video service" shall not include any video programming

---

[3] La. R.S. 45:1366 A provides:

> The holder of a certificate may be required, pursuant to an ordinance adopted by the local governmental subdivision, to pay a franchise fee equal to a specified percentage of such holder's gross revenues received from the provision of cable service or video service to subscribers located within the municipality or unincorporated areas of the parish and from advertising disseminated through cable service or video service and home shopping services as allocated under Subsection D of this Section. The fee shall not exceed five percent of the holder's gross revenues. …

provided by a commercial mobile service provider as defined in this Section or video programming provided as part of a service that enables users to access content, information, e-mail, or other services offered over the public Internet.

Effective May 22, 2022, the Legislature amended La. R.S. 45:1363(14), which references streaming content offered over the internet, specifically excluding it from the definition of "video service," as follows:

"Video service" means video programming services provided by a video service provider through wireline facilities located at least in part in the public rights of way without regard to delivery technology, including internet protocol technology. **Video service shall not include any of the following**:

(a) Video programming provided by a commercial mobile service provider as defined in this section.
(b) Direct-to-home satellite services as defined in 47 U.S.C. 303(v).
(c) Video programming accessed via a service that enables users to access content, information, email, or other services offered over the internet, including **streaming content**.

(Emphasis added).

On the same day that Kenner's City Council enacted the franchise-fee ordinance in 2021, Kenner filed this putative class action lawsuit on behalf of itself and all of Louisiana's political subdivisions similarly situated to collect franchise fees from defendants Netflix and Hulu. Netflix and Hulu asserted exceptions of no right of action, arguing that they were not franchise "holders" under the CCTA; and exceptions of no cause of action, contending that various provisions of the CCTA do not require streaming service providers to obtain franchise certificates or pay franchise fees.

The trial court sustained the defendants' exceptions of no cause of action and no right of action, dismissing with prejudice Kenner's lawsuit against them. The trial court's Judgment states:

First, the Louisiana Consumer Choice for Television Act ("the CCTA") does not confer upon Plaintiff a right of action or cause of action against Netflix and Hulu.

Second, under the CCTA, a "franchise" "authorizes the construction and operation of a cable system, or other wireline facilities used to distribute video programming services, in the public right of way." La. R.S. § 45:1363(6). Plaintiff does not allege that either Netflix or Hulu construct, operate, install, or otherwise maintain any cable system, wireline facilities, or other infrastructure in the public right of way. Defendants are therefore not required to obtain a franchise before they make their content available to their customers, and Defendants are not subject to the CCTA.

Third, even if Defendants were otherwise subject to the CCTA …, Defendants' video content was and is "provided solely as part of, and via, a service that enables users to access content, information, electronic mail, or other services offered over the public Internet." La. R.S. § 45:1363(14) (pre-amendment). Defendants' content is accessed by their customers over the networks of third-party Internet service providers, whose service allows Defendants' customers to access content over the public Internet, *i.e.*, the Internet.[4]

Kenner now appeals.

## LAW AND DISCUSSION

Kenner assigns three errors on appeal: (1) the trial court erred in finding that the CCTA did not confer on it a right of action or cause of action against Netflix and Hulu; (2) the trial court erred by finding that Netflix and Hulu are not required

---

[4] The trial court's Judgment further stated in a footnote:

> The Parties agree, and the Court also holds, that Defendants' content is not "video service" under the current, post-amendment definition because it is "accessed via a service that enables users to access content, information, e-mail, or other services offered over the internet, including streaming content." *See* HB276 Act 164, codified at La. R.S. § 45:1363(14) (effective date May 26, 2022).

In effect, because the Legislature's 2022 amendment to La. R.S. 45:1363(14) specifically excludes streaming services like Netflix and Hulu from paying franchise fees, Kenner's potential claim for payment of franchise fees against these defendants, were such a claim to exist, would be foreclosed on the amendment's May 26, 2022 effective date.

to obtain a franchise before they make their content available to their customers and that Netflix and Hulu are not subject to the CCTA; and (3) the trial court erred by finding that Netflix and Hulu's video content is excluded from the definition of "video service."

*Assignment of Error No. 1 - Exception of No Right of Action*

The peremptory exception of no right of action tests whether the plaintiff has a real and actual interest in the action. La. C.C.P. art. 927(6). The court assumes the petition states a valid cause of action for some person and questions whether the plaintiff is a member of the class that has a legal interest in the subject matter of the litigation. *Succession of Brandt*, 21-131 (La. App. 5 Cir. 12/29/21), 334 So.3d 1041, 1045. Determining whether a plaintiff has a right to bring an action raises a question of law, which requires *de novo* review on appeal. *I E C I, LLC v. South Central Planning & Dev. Comm'n, Inc.*, 21-382 (La. App. 5 Cir. 2/23/22), 336 So.3d 601, 609.

Netflix and Hulu argued in their exceptions of no right of action that La. R.S. 45:1367 B gives political subdivisions a limited right of action to sue for fees from a franchise "certificate holder," but it does not authorize a political subdivision like Kenner to sue to enforce franchise obligations against parties who do not hold a franchise certificate. They contend that under La. R.S. 45:1363(4), the franchising authority belongs to the Secretary of State, and only the Secretary of State can transform a video service provider into a franchise certificate holder. Permitting a political subdivision to pursue a claim against an entity that does not hold a franchise certificate circumvents that authority and the very purpose of the CCTA.

On the other hand, Kenner claims that pursuant to La. R.S. 45:1367 B, it has a responsibility to its citizens to enforce its own ordinance requiring cable or video services to apply for a franchise certificate and pay franchise fees. Because Netflix

and Hulu have not applied for such a certificate, Kenner has the right to enforce the statute and its ordinance.

We disagree. La. R.S. 45:1367 B provides: "Any suit with respect to a dispute *arising out of or relating to the amount of the franchise fee* due to a local governmental subdivision under La. R.S. 45:1366 shall be filed either by the local governmental subdivision … *or by the certificate holder* … in a state or federal court of competent jurisdiction[.]" (Emphasis added). La. R.S. 45:1367 C further provides that before either party may file suit, "the local governmental subdivision *or certificate holder* shall give the other party written notice of any dispute not resolved in the normal course of business." (Emphasis added). Each of these provisions contemplates that CCTA litigation involving a governmental subdivision would involve claims brought by or against a *certificate holder* where the parties disagree as to the fee owed. Neither of these provisions grants the governmental subdivision the right of enforcement against non-holders of franchise certificates.

Furthermore, as stated in the CCTA, the Louisiana Legislature intended the Act to "provide uniform regulation of cable and video franchising." La. R.S. 45:1362 D. Permitting political subdivisions to enforce the Act's franchise requirements against entities that do not hold a franchise certificate would be decidedly at odds with this stated legislative intent and with additional provisions of the CCTA. For example, La. R.S. 45:1374 A limits a local governmental subdivision's authority to regulate "the holder of a certificate" by granting the subdivision authority only to establish "reasonable guidelines regarding the use of PEG access programming streams or channels" or to require the certificate holder to "register with the local governmental subdivision." La. R.S. 45:1374 A does not grant local governmental subdivisions the right to enforce the Act's provisions by filing suit against non-holders of certificates.

Kenner concedes that neither Hulu nor Netflix holds a franchise certificate, and we have found no other provision in the CCTA upon which a political subdivision like Kenner would be permitted to pursue franchise-fee claims against parties who do not hold a franchise certificate. Courts in other jurisdictions addressing this issue likewise have determined that local governmental entities lack the authority to enforce the provisions of video-service-provider franchise statutes. *See*, *e.g.*, *Maple Heights v. Netflix, Inc.*, 2022 WL 17331374, at *5 (Ohio, Nov. 30, 2022) ("Nothing in the Act indicates that the General Assembly intended to create a right of remedy for a local government to enforce the video-service-authorization and franchise-fee requirements of the Act against a business that the local government thinks ought to be designated as a video-service provider.").[5]

Accordingly, we find the trial court correctly determined that Kenner has no right of action to enforce the provisions of the CCTA against Netflix and Hulu, who do not hold franchise certificates.

*Assignment of Error No. 1 - Exception of No Cause of Action*

The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition against the particular defendant. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So.2d 1211, 1216-17; *Warrant v. HDI Glob. Ins. Co.*, 21-570 (La. App. 5 Cir. 5/16/22), 341 So.3d 1249,

---

[5] *See also City of New Boston, Tex. v. Netflix, Inc.*, 565 F.Supp.3d 865, 868-69 (E.D. Tex. Sept. 30, 2021) (finding that the Texas Utility Code gave only the Public Utility Commission the authority to issue a franchise certificate to a cable service or video service provider, and individual municipalities had no authority to declare a provider a "holder" of a state-issued franchise); *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (affirming the dismissal of claims against Netflix and Hulu after finding that the Nevada statute "seems to have deprived local governments of enforcement powers intentionally" when it vested enforcement of the statute in state agencies); *City of E. St. Louis v. Netflix, Inc.*, 2022 WL 4448868, at *4 (S.D. Ill. Sept. 23, 2022) (appeal pending) (finding that Illinois' Cable and Video Competition Law did not authorize a local government to bring suits for purported violations; the enforcement was left to the Attorney General); *City of Ashdown, Ark. v. Netflix, Inc.*, 52 F.4th 1025, 1028 (8th Cir. 2022) (holding that the VSA's "clear intent to create uniformity across the state would be undermined if individual municipalities possessed authority to bring enforcement suits independently of the state body charged with enforcement.").

1254, *writ denied*, 22-938 (La. 11/1/22), 349 So.3d 10, and *writ denied*, 22-1002 (La. 11/1/22), 349 So.3d 5. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *I E C I, LLC*, 336 So.3d at 611. The petition must set forth material facts upon which the cause of action is based. La. C.C.P. art. 891 A. All well-pled allegations of fact in the petition must be accepted as true. *I E C I*, 336 So.3d at 611 (citing *Donnaud's Inc. v. Gulf Coast Bank and Trust Co.*, 03-427 (La. App. 5 Cir. 9/16/03), 858 So.2d 4, 6, *writ denied*, 03-2862 (La. 1/9/04), 862 So.2d 985). The correctness of conclusions of law is not conceded for the purposes of ruling on an exception of no cause of action. *Christian Schools, Inc. v. La. High Sch. Athletic Ass'n*, 20-0762 (La. App. 1 Cir. 5/18/22), 342 So.3d 1068, 1075, *writ denied*, 22-1015 (La. 10/12/22), 348 So.3d 78. The exception of no cause of action raises a question of law subject to *de novo* review. *Id*.

Kenner argues that it has stated a cause of action in its petition when it asserts that Netflix and Hulu are "video service providers" engaged in "video programming" who are subject to the provisions of the CCTA.[6] To support these

---

[6] Kenner's Petition alleges, in relevant part, that:

- Customers view Netflix's and Hulu's video programming – such as television shows, movies, and documentaries – using an internet-connected device. Internet-connected devices are electronic devices that have software enabling such devices to receive and then display Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV, smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.
- Netflix and Hulu provide video programming to their customers through wireline facilities located at least in part in the public right-of-way. Neither Netflix nor Hulu actually provide their customers access to the public internet. Instead, customers receive an internet connection through an internet-service provider ("ISP"). The internet-service provider supplies an internet account and a physical means to connect to the internet (such as a modem), which allows customers to access the internet.
- Netflix's and Hulu's customers typically use a broadband internet connection, such as DSL or fiber optic cable to receive Defendants' programming. … These broadband internet connections rely upon wireline facilities located in the public right-of-way to bring internet service to customers. In turn, this means that Netflix and Hulu provide their video programming through wireline facilities located at least in part in the public right-of-way because they use these broadband internet connections in the public right-of-way to provide their video programming.
- Netflix and Hulu are video-service providers within the meaning of Louisiana's 2008 Consumer Choice in Television Act, which defines "video service" as "video

allegations, Kenner alleges that "Netflix and Hulu provide video programming to their customers through wireline facilities located at least in part in the public right-of-way" and that "Netflix and Hulu are video-service providers within the meaning of Louisiana's 2008 Consumer Choice in Television Act."

In their exceptions of no cause of action, Netflix and Hulu outlined several reasons why the CCTA does not apply to streaming providers like them. First, they argue that they are not "video service providers" because they do not construct or operate their own wireline facilities in the public right of way.

The definitions found in the CCTA provide support for this argument. Under the CCTA, "video service provider" means any entity providing "video service." La. R.S. 45:1363(15). Before the 2022 amendment, "video service" was defined as "video programming services provided through wireline facilities located at least in part in the public rights of way without regard to delivery technology, including Internet protocol technology" but does not include "video programming provided as part of a service that enables users to access content, information, e-mail, or other services offered over the public Internet." La. R.S. 45:1363(14) (2008).[7] A "franchise" that is granted by the Secretary of State "authorizes the construction and operation of a cable system, or other wireline facilities used to distribute video programming services, in the public rights of way." La. R.S. 45:1363(6). "Public

_____

programming services provided through wireline facilities located at least in part in public rights of way without regard to delivery technology, including Internet protocol technology. 'Video service' shall not include any video programming provided by a commercial mobile service provider as defined in this Section or video programming provided as part of a service that enables users to access content, information, e-mail, or other services offered over the public Internet." La. R.S. 45:1363(14). This exception relates to internet service providers. Neither Netflix nor Hulu are internet service providers. Further, Netflix and Hulu are not commercial mobile service providers as defined by 47 U.S.C. § 332(d) or La. R.S. 45:1363(5), and Netflix and Hulu are not providing video programming solely as part of a service that enables users to access content, information, electronic mail or other service offered over the public Internet.

[7] Kenner concedes that the 2022 amendment to the CCTA's definition of "video service" in La. R.S. 45:1363(14) unequivocally excludes Netflix and Hulu from its application as of its May 26, 2022 effective date.

right of way" means "the area on, below, or above a public roadway, highway, street, public sidewalk, alley, or waterway." La. R.S. 45:1363(12).

Kenner's petition acknowledges that Netflix's and Hulu's customers access their video services through the customers' own devices via an internet connection provided by a third-party internet service provider (ISP), which may or may not construct or operate its own facilities in the public rights of way, and that Netflix and Hulu are not internet service providers:

> Netflix's and Hulu's customers typically use a broadband internet connection, such as DSL or fiber optic cable to receive Defendants' programming. … These broadband internet connections rely upon wireline facilities located in the public right-of-way to bring internet service to customers. *In turn, this means that Netflix and Hulu provide their video programming through wireline facilities located at least in part in the public right-of-way because they use these broadband internet connections in the public right-of-way to provide their video programming.*

(Emphasis added). By tracking the statutory language without alleging specific facts to support it, Kenner's statement in its petition—that "Netflix and Hulu provide their *video programming* through wireline facilities located at least in part in the public right-of-way because they use these broadband internet connections"—constitutes a conclusion of law rather than an allegation of material fact. Conclusions of law need not be accepted as true for purposes of evaluating an exception of no cause of action. *Christian Schools, Inc.*, 342 So.3d at 1075. Moreover, this statement is belied by the petition's additional factual allegations regarding the customers' means of accessing defendants' content, such as:

> Neither Netflix nor Hulu actually provide their customers access to the public internet. Instead, customers receive an internet connection through an internet-service provider ("ISP"). The internet-service provider supplies an internet account and a physical means to connect to the internet (such as a modem), which allows customers to access the internet.

and:

> These broadband internet connections rely upon wireline facilities located in the public right-of-way to bring internet service to customers.

Reviewing Kenner's petition in its entirety, we see no material facts to support Kenner's conclusory allegations that Netflix and Hulu "provide their *video programming* through wireline facilities located at least in part in the public right-of-way…."

Further, we read the reference to "public rights of way" in the definition of "video service," as well as the CCTA's numerous additional references to public rights of way, to mean that a "video service provider" must have some nexus with—distinct from mere usage of—the "wire line facilities located at least in part in the public rights of way." Kenner's petition contains no factual allegations to suggest that Netflix and Hulu operate or maintain any facilities on public rights of way. Accordingly, for purposes of evaluating their exceptions of no cause of action, we find that Netflix and Hulu do not fit within the definition of "video service providers" who are required to obtain certificates of franchise under the CCTA.

Other jurisdictions, when interpreting statutory language virtually identical to the CCTA, similarly have determined that streaming services like Netflix and Hulu are exempt from these franchise requirements. For example, in *City of Knoxville v. Netflix, Inc.*, 656 S.W.3d 106, 109 (Tenn. Nov. 22, 2022), the Supreme Court of Tennessee, responding to a certified question from federal court, determining that "[t]he Act … ties the franchise-fee obligation to physical occupation of public rights-of-way in specific localities—consistent with the principal justification for cable franchising." The Court concluded that an entity

that does not operate facilities in the public right of way does not fall within the Act's definition of a "video service provider." *Id*. at 115.[8]

Second, Netflix and Hulu argue that even if defendants were considered to be "video service providers," they fit within the *exception* found in the definition of "video service," La. R.S. 45:1363(14) (2008), which exception states: " 'Video service' shall not include any video programming provided by a commercial mobile service provider as defined in this Section or video programming provided as part of a service that enables users to access content, information, e-mail, or other services offered over the public Internet." Because we have already determined that Neflix and Hulu are not "video service providers" under La. R.S. 45:1363(14) and (15) (2008), we decline to address the parties' competing arguments as to whether Netflix and Hulu also fit within the exception as it existed before the Legislature enacted the 2022 amendment.[9]

---

[8] *See also Maple Heights*, 2022 WL 17331374, at *4 ("Because Netflix and Hulu provide online-streaming services over the public Internet, they are not video-service providers. They do not need to place their own wires or equipment in the public rights-of-way to provide their subscribers with programming, and the equipment used to access their services belongs to their customers, not to them."); *Gwinnett County v. Netflix, Inc.*, 2023 WL 2398217, at *10 (Ga. Ct. App., Mar. 8, 2023) (McFadden, J., concurring) (affirming the trial court's dismissal of claims asserted by local governments against streaming companies, and noting that the local governments' petition did not allege that streaming companies constructed or operated a network in the public right of way—a necessary allegation to trigger the application of Georgia's franchise statute); *City of Lancaster v. Netflix, Inc.*, 2022 WL 1744233, at *8-9 (Cal. Sup. Ct. Apr. 13, 2022) (rejecting an interpretation of the statute that would require streaming services to obtain a "construction and operation" franchise where those services did not operate facilities in the public rights of way).

[9] Kenner sets forth a number of reasons why the exclusion in former La. R.S. 45:1363(14) (2008) applies only to ISPs, not to streaming services. First, Kenner points out that the statutory language refers to "video programming provided as *part of* a service …," but the *only* service that Netflix and Hulu provide is video programming; Netflix and Hulu provide none of the other functions mentioned, such as email access. Thus, according to Kenner, applying this exception to Netflix and Hulu necessitates the elimination of the "part of" language—an untenable result where all parts of a statute must be given effect. Second, Kenner argues that Netflix's and Hulu's services are not "offered over the *public Internet*" because their services are available only to paying subscribers. According to Kenner, because the exclusion includes the word "public," and "public" generally refers to something that is open or available for all, paid video services are not meant to be excluded from the CCTA's requirements. Third, Kenner argues that Netflix and Hulu do not "enable" users to access their services over the public internet – this is a job for ISPs. For all of these reasons, Kenner argues, the exclusion is meant to apply only to ISPs.

22-CA-466                                                      12

In sum, Kenner's allegations fail to satisfy the pleading requirements necessary to state a cause of action against Netflix and Hulu under the CCTA. Accordingly, we affirm the trial court's ruling sustaining Netflix's and Hulu's exceptions of no cause of action.

*Assignments of Error No. 2 and No. 3*

In its second assignment of error, Kenner asserts that the trial court erred in finding that Netflix and Hulu are not required to obtain a franchise from the Secretary of State before making their content available to their customers, and that Netflix and Hulu are not subject to the CCTA. For the reasons expressed in our discussion of the defendants' exceptions of no cause of action, we find no merit to Kenner's second assignment of error.

In its third assignment of error, Kenner argues that the trial court erred in finding that Netflix's and Hulu's video content is excluded from the definition of "video service." This argument is limited to an analysis of the pre-amendment version of La. R.S. 45:1363(14). Because we already have determined that Netflix and Hulu do not fit within the definition of "video service provider" under the former statutory language, however, we decline to address Kenner's third assignment of error.

DECREE

The trial court's judgment granting the exceptions of no right of action and exceptions of no cause of action, and dismissing with prejudice the claims of the City of Kenner against Netflix, Inc., and Hulu, LLC, is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>MAY 3, 2023</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-466

### <u>E-NOTIFIED</u>
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
JOSEPH M. BRUNO, SR. (APPELLANT)         BRANDIE M. THIBODEAUX (APPELLEE)         MARTIN E. LANDRIEU (APPELLEE)
MICAH C. ZENO (APPELLEE)                 PHILLIP J. ANTIS, JR. (APPELLEE)

### <u>MAILED</u>
JOSHUA C. JOSEPH (APPELLANT)             GLENN L. M. SWETMAN (APPELLEE)           DONALD D. REICHERT, JR. (APPELLANT)
MALVERN C. BURNETT (APPELLANT)           MARY A. REED (APPELLEE)                  MARKITA HAWKINS (APPELLANT)
ATTORNEYS AT LAW                         ATTORNEYS AT LAW                         ATTORNEYS AT LAW
1523 POLYMNIA STREET                     365 CANAL STREET                         855 BARONNE STREET
NEW ORLEANS, LA 70130                    SUITE 3000                               NEW ORLEANS, LA 70113
                                         NEW ORLEANS, LA 70130

ELVIN L. KISTNER  (APPELLANT)                                                     MARY ROSE ALEXANDER  (APPELLEE)
KISTNER, HAMILTON, ELAM & MARTIN,                                                 ROBERT C. COLLINS, III  (APPELLEE)
LLC                                      HENRY ADRIAN VAN SEVENTER                LATHAM & WATKINS, LLP
1406 NORTH BROADWAY                      (APPELLEE)                               3300 NORTH WABASH AVENUE
ST. LOUIS, MO 63102                      LATHAM & WATKINS, LLP                    SUITE 2800
                                         200 CLARENDON STREET                     CHICAGO, IL 60611
                                         BOSTON, MA 02116

JEAN A. PAWLOW  (APPELLEE)
PETER E. DAVIS  (APPELLEE)                                                        CALEB GRAVES  (APPELLEE)
LATHAM & WATKINS, LLP                    PRAATIKA PRASAD  (APPELLEE)              RUSSELL L. KOSTCLAK  (APPELLEE)
555 ELEVENTH STREET, NORTHWEST           WILSON SONSINI GOODRICH & ROSATI        VICTOR JIH  (APPELLEE)
SUITE 1000                               1301 AVENUE OF THE AMERICAS             WILSON SONSINI GOODRICH & ROSATI
WASHINGTON, DC 20004                     40TH FLOOR                              633 WEST FIFTH STREET
                                         NEW YORK, NY 10019                       SUITE 1550
                                                                                  LOS ANGELES, CA 90071