# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-2126

———————————————

Andrew Hutchinson, Individually and as Parent and Natural Guardian of R.H, a Minor Child; Jessica Hutchinson, Individually and as Parent and Natural Guardian of R.H., a minor child

*Plaintiffs - Appellants*

v.

United States of America

*Defendant - Appellee*

——————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

——————

Submitted: January 19, 2023
Filed: June 29, 2023

——————

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

——————

STRAS, Circuit Judge.

Major Andrew Hutchinson's son suffered serious injuries when a soccer goal tipped over at the Little Rock Air Force Base. Although he sued the Air Force for negligently failing to secure the goal to the ground and warn of the potential danger,

the district court[1] concluded that the Federal Tort Claims Act stood in the way. *See* 28 U.S.C. §§ 1346(b)(1), 2674. We affirm.

I.

Major Hutchinson lived with his family in on-base "military housing." Located nearby was Warfit Field, an athletic facility that hosted "fitness[-]improvement programs for airmen." It served as "a popular amenity" for military personnel and their families "when it was not otherwise in use by the Air Force."

In a tragic turn of events, Major Hutchinson's three-year-old son suffered a serious injury during a soccer game on Warfit Field. While "playing goalie," another child had placed "his hands on the net," which caused the entire, unanchored soccer goal to fall over. The three-year-old, who was near it at the time, suffered a fractured skull that required hospitalization and multiple surgeries.

When the Air Force refused to compensate Major Hutchinson and his wife for their son's injuries, the couple sued the United States for negligence under the Federal Tort Claims Act. *See* 28 U.S.C. §§ 1346(b)(1), 2674. The complaint alleged that the Air Force had failed to maintain the goal "in a reasonably safe condition" and warn users about its instability. It also described the goal as posing an especially serious risk to young children, "who were likely to be attracted to [it]." *See Bader v. Lawson*, 898 S.W.2d 40, 43 (Ark. 1995) (describing the attractive-nuisance doctrine).

The district court, for its part, granted the Air Force's motion to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). To bring a claim under the Federal Tort Claims Act, the Hutchinsons had to show that "the United

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

States, if a private person, would be liable" under state law. 28 U.S.C. § 1346(b)(1). They could not, the district court reasoned, because of Arkansas's recreational-use statute, which provides added protection to landowners who allow others to use their land "for recreational purposes." Ark. Code Ann. § 18-11-305. We review this decision de novo. *See Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc).

## II.

The jurisdictional rule in play is sovereign immunity, which "shields the [f]ederal [g]overnment and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). One exception arises under the Federal Tort Claims Act "'for certain torts committed by federal employees' acting within the scope of their employment." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *Meyer*, 510 U.S. at 475–76). As relevant here, it gives district courts "exclusive jurisdiction" over negligence suits "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In those circumstances, the United States is on the hook for damages "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674.

It may seem counterintuitive, but what matters for getting this case into *federal* court is *state* law. Under the Federal Tort Claims Act, the United States has waived immunity only to the extent a private party standing in the government's shoes would be liable under Arkansas law. *See Two Eagle v. United States*, 57 F.4th 616, 621 (8th Cir. 2023); *Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006).

The Hutchinsons are suing for negligence: the Air Force's failure to anchor the soccer goal and warn of the danger it posed. Both theories are actionable, *see, e.g.*, *Young v. Paxton*, 873 S.W.2d 546, 549–50 (Ark. 1994), but Arkansas's recreational-use statute limits landowner liability. It provides, in relevant part, that

an owner of land who, either directly or indirectly, invites or permits without charge any person to use his or her property for recreational purposes does not thereby:

. . .

(2)     Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; [or]

. . .

(4)     Assume responsibility for or incur liability for injury to the person or property caused by any natural or artificial condition, structure, or personal property on the land.

Ark. Code Ann. § 18-11-305; *see Moss v. United States*, 895 F.3d 1091, 1096–97 (8th Cir. 2018) (observing "that 'the United States is entitled to the benefit of state recreational[-]use statutes, if applicable, when it is sued under the Federal Tort Claims Act'" (citation omitted)).

The circumstances here fall within the statute. First, the Air Force "invite[d] or permit[ted]" the Hutchinsons to use Warfit Field. Ark. Code Ann. § 18-11-305; *see id.* § 18-11-305(2) (creating "no duty of care" in those circumstances). Second, they used the field for a "recreational purpose[]": to play soccer. *Id.* § 18-11-305; *see id.* § 18-11-302(7) (defining "[r]ecreational purpose" to include "[a]ny . . . activity undertaken for exercise, . . . relaxation, or pleasure").

In this situation, the recreational-use statute would shield a private landowner from "liability for injury" caused by the soccer goal, which is an "artificial condition, structure, or personal property on the land." *Id.* § 18-11-305(4). The Federal Tort Claims Act then extends protection to the United States by placing this type of accident *outside* its waiver of sovereign immunity. *See* 28 U.S.C. §§ 1346(b)(1), 2674; *see also Moss*, 895 F.3d at 1100–01 (explaining that "there is no jurisdiction under the [Federal Tort Claims Act]" when "a private landowner would be immune under the [recreational-use statute]"). With no waiver, "the district court lacks subject[-]matter jurisdiction to hear the case." *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011).

III.

The Hutchinsons, for their part, believe that the recreational-use statute does not apply. They offer several reasons why, but none gets them far.

A.

The first relies on Arkansas's soccer-goal-safety statute, which says that "[a] soccer goal in a public recreation area shall be anchored." Ark. Code Ann. § 20-7-137(b); *see id.* § 20-7-137(a)(2) (defining "[p]ublic[-]recreation area" to include "[s]ports field[s]"). In the Hutchinsons' view, the recreational-use statute must "give way" to this more specific requirement.

The problem is that the soccer-goal-safety statute has no private enforcement mechanism. It has no "explicit language" creating a right. *City of Ashdown v. Netflix, Inc.*, 52 F.4th 1025, 1027 (8th Cir. 2022). And even if it did, it does not specify a remedy. *See Baptist Health v. Murphy*, 373 S.W.3d 269, 288 (Ark. 2010) (noting that when a statute "give[s] plaintiffs a private cause of action, the remedy is limited to what the statute expressly provides"). So, under Arkansas law, it cannot create an "express right of action" for damages. *City of Ashdown*, 52 F.4th at 1027; *see Young v. Blytheville Sch. Dist.*, 425 S.W.3d 865, 871–72 (Ark. Ct. App. 2013) (rejecting a suit seeking to enforce a statute that "does not expressly provide for a private right of action or for any kind of remedy").

It also does not create a private right of action by implication. Arkansas courts have implied rights of action, but only when a statute imposes "an affirmative duty" designed to "protect . . . a special class of citizens." *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701, 712 (Ark. 2012). In those limited circumstances, a "breach of th[e] duty can lead to a suit for negligence." *Shannon v. Wilson*, 947 S.W.2d 349, 357 (Ark. 1997); *see Jackson v. Cadillac Cowboy, Inc.*, 986 S.W.2d 410, 413, 415 (Ark. 1999) (holding that "the sale of alcohol . . . to an

-5-

intoxicated person" in violation of state law "is some evidence of negligence," even though the law in question was "silent on civil liability").

Even assuming the soccer-goal-safety statute qualifies, *see Cent. Okla. Pipeline*, 400 S.W.3d at 712, it can only get the Hutchinsons to negligence, which is not enough, *see* Ark. Code Ann. § 18-11-307(1). The only way landowners lose the protection of the recreational-use statute, aside from charging a fee, is to act "malicious[ly]." *Id*. § 18-11-307. Malice is not an easy bar to clear under the statute: it requires "an intentional act of misconduct." *Id.* § 18-11-302(4) (defining "[m]alicious" as "an intentional act of misconduct that the actor is aware is likely to result in harm," as opposed to "negligent or reckless conduct"). And here, the complaint does not allege anything close. *See Cent. Okla. Pipeline*, 400 S.W.3d at 712 (declining to recognize an implied right of action when a related statute "bar[red]" recovery).

Nor does the soccer-goal-safety statute implicitly repeal the recreational-use statute. Under Arkansas law, "a repeal by implication is not favored and is never allowed except when there is such an invincible repugnancy between the two provisions that both cannot stand." *Hurt-Hoover Invs., LLC v. Fulmer*, 448 S.W.3d 696, 700 (Ark. 2014). The standard is high: the Hutchinsons must show that "the statutes are in irreconcilable conflict." *Lambert v. LQ Mgmt., L.L.C.*, 426 S.W.3d 437, 440 (Ark. 2013).

There is no conflict here. *See Brock v. Townsell*, 309 S.W.3d 179, 190 (Ark. 2009). Nothing about the soccer-goal-safety statute alters the "plain and unambiguous" language of the recreational-use statute. *Lambert*, 426 S.W.3d at 440. And the only way to conclude otherwise is to recognize a tort-based enforcement scheme for a statute without one—something we cannot do. *See Young*, 425 S.W.3d at 871–72 (explaining why a statute that "impose[d] a duty" on schools to provide safe facilities did not implicitly repeal another that immunized them from suit).

-6-

B.

Without a way around the recreational-use statute, the Hutchinsons ask us to plow right through it. The idea behind the statute, as they point out, "is to encourage owners of land to make land and water areas available to *the public* for recreational purposes." Ark. Code Ann. § 18-11-301 (emphasis added). From there, they argue that it does not apply because only military personnel and their families can use Warfit Field.

There is just one problem. In extending specific protection to landowners, the recreational-use statute has no requirement that the land be open to *everyone*. As it states, "an owner of land who . . . invites or permits without charge *any person* to use his or her property for recreational purposes does not thereby . . . incur liability for injury to the person." *Id.* § 18-11-305 (emphasis added). "[A]ny person" refers to "[o]ne, some, every, or all without specification." *The American Heritage Dictionary of the English Language* 81 (5th ed. 2016); *see Webster's Third New International Dictionary* 97 (2002) (defining "any" as "one or more indiscriminately" or "any person or persons"). The point is that, as long as at least "one" person is using the land recreationally for free, the owner is not liable for negligence "to th[at] person," regardless of whether others are welcome to use it too. Ark. Code Ann. § 18-11-305(4).

We recognize that some state courts have created a public-access requirement.[2] What cements our conclusion that Arkansas courts would not is that

---

[2]*See, e.g.*, *Ouradnik v. Ouradnik*, 912 N.W.2d 674, 677 (Minn. 2018); *Hall v. Henn*, 802 N.E.2d 797, 799–800 (Ill. 2003); *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1293 (Utah 1996). Other courts have not. *See, e.g.*, *State ex rel. Young v. Wood*, 254 S.W.3d 871, 873 (Mo. banc 2008); *Bragg v. Genesee Cnty. Agric. Soc'y*, 644 N.E.2d 1013, 1017–18 (N.Y. 1994); *Peterson v. Schwertley*, 460 N.W.2d 469, 471 (Iowa 1990); *Friedman v. Grand Cent. Sanitation, Inc.*, 571 A.2d 373, 375–77 (Pa. 1990); *see also Cudworth v. Midcontinent Commc'ns*, 380 F.3d 375, 379–81, 379 n.3 (8th Cir. 2004) (predicting that the North Dakota Supreme Court would

every statute must be given "its plain meaning" without trying to "search for legislative intent." *Pruitt v. Smith*, 610 S.W.3d 660, 662 (Ark. 2020) (quoting *Weeks v. Thurston*, 594 S.W.3d 23, 25 (Ark. 2020)); *see* 28 U.S.C. § 1346(b)(1) (looking to "the law of the place where the act or omission occurred"). Here, the "language used" makes clear that there is no duty owed to recreational users who enter land for free, regardless of whether it is open to everyone. *Pruitt*, 610 S.W.3d at 662 (quoting *Weeks*, 594 S.W.3d at 25).

Nor, contrary to what the Hutchinsons argue, does our refusal to recognize a public-access requirement create a "nonsensical" result. *Perrine*, 911 P.2d at 1293; *see Clark v. Johnson Reg'l Med. Ctr.*, 362 S.W.3d 311, 316 (Ark. 2010) (cautioning against "statutory interpretations that defy common sense and produce absurd results"). With or without one, the statute "eliminates the primary obstacle to opening property for recreational use": "fear of liability." *Cudworth*, 380 F.3d at 380. Indeed, "a blanket abrogation of duty to all recreational users . . . more readily promote[s] that objective" by removing the "uncertainty" that a case-by-case inquiry into the land's openness would create. *Peterson*, 460 N.W.2d at 471. At a minimum, the Arkansas General Assembly could have thought so, and "it is not [our] role to second-guess" its decision. *Wilson v. Weiss*, 245 S.W.3d 144, 151 (Ark. 2006).

## C.

It is also not our role to graft a landlord-tenant exception onto the recreational-use statute. The Hutchinsons lived in on-base "military housing" when the accident occurred. Even assuming that living there made them tenants of the Air Force,[3] Warfit Field is not part of "the base housing area." Rather, it is a facility that they

---

not create a public-access requirement and collecting cases on both sides of the issue).

[3]The existence of a landlord-tenant relationship is no sure thing because a private contractor, not the Air Force, managed on-base housing.

were "invite[d] or permit[ted]" to use because they are a military family, Ark. Code Ann. § 18-11-305, at least "when it was not otherwise in use" for "Air Force-related fitness testing." So whatever duties the Air Force may have owed them as tenants did not extend to Warfit Field. *See Wheeler v. Phillips Dev. Corp.*, 947 S.W.2d 380, 382 (Ark. 1997); *see also Herden*, 726 F.3d at 1046 (explaining that the plaintiff bears "the burden of proving the existence of subject[-]matter jurisdiction" (citation omitted)). All roads, in other words, lead back to the recreational-use statute. *See* Ark. Code Ann. § 18-11-305.

## D.

The Hutchinsons' final argument is perhaps their weakest. They argue that, as individuals, they cannot be "person[s]" under the recreational-use statute. Ark. Code Ann. § 18-11-302(6). In their view, the definition contains an exclusive list that "includes" *only* "churches, religious organizations, fraternal organizations, and other similar organizations." *Id.* As it turns out, however, the word "includes" has the opposite effect: it "is usually a term of enlargement, and not of limitation." *Pritchett v. City of Hot Springs*, 514 S.W.3d 447, 451 (Ark. 2017) (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47.7 (7th ed. 2007)). Treating it that way means that the list *adds* to the plain meaning of "person[s]," rather than *subtracts* from it.

Other textual clues point in the same direction. First, surrounding definitions use the word "means" to introduce a list. *See* Ark. Code Ann. § 18-11-302(1), (3), (5); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (explaining that "the word 'means' is employed" in "an exclusive definition" (quoting *Groman v. Comm'r*, 302 U.S. 82, 86 (1937))). "Includes," by contrast, sweeps more broadly. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) (stating the general rule that a "different term denotes a different idea"). Second, limiting the word "person" to just the listed organizations creates inconsistencies elsewhere. *See Holbrook v. Healthport, Inc.*, 432 S.W.3d 593, 597 (Ark. 2014) (directing courts to read statutes in a "consistent[] [and] harmonious"

way).  If "person[s]" and organizations are synonymous, then it would not make sense to refer to an "injury to the person . . . caused by any natural or artificial condition, structure, or personal property on the land."  Ark. Code Ann. § 18-11-305(4).

\* \* \*

Any way you cut it, the Hutchinsons cannot show that a private party in the Air Force's shoes would have been liable for the injuries suffered by their son.  As tragic as the circumstances of this case are, there has been no waiver of sovereign immunity. *See* 28 U.S.C. §§ 1346(b)(1), 2674; *see also Moss*, 895 F.3d at 1100–01.

IV.

We accordingly affirm the judgment of the district court.

_____